.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PARIS HARRIS,

     Petitioner,               No. 2:06:cv-01925-MDS

  vs.                              ORDER

T. FELKER, WARDEN, et al.,

     Respondent

_____/

     Pending before the court are Petitioner Paris Harris's (Harris) application for writ of habeas corpus (doc. 1), Respondent T. Felker's (Felker) answer (doc. 6), and Harris's traverse (doc. 11).  For the reasons stated below, Harris's application is denied.

I

     In 2004, Harris was convicted by a Sacramento Superior Court jury of: (1) assault with a firearm (Cal. Penal Code §245(a)(2)); (2) discharge of a firearm at a motor vehicle (Cal. Penal Code § 246); (3) possession of a firearm after a prior

1

PDF created with pdfFactory trial version www.pdffactory.com

1  juvenile adjudication (Cal. Penal Code § 12021(e)); and terrorist threats (Cal. Penal

2  Code § 422).  In addition, the jury found that Harris personally used a firearm

3  during the commission of count 1 in violation of California Penal Code § 12022.5(a)

4  and (d).  Lodged Doc. 1 at 1.  Harris was sentenced to the upper term of 15 years

5  and 4 months in state prison on the basis of his two prior juvenile convictions for

6  first-degree murder.  Lodged Doc. 1 at 1-2.

7                                                    A

8          Harris filed a direct appeal of his conviction before the California Court of

9  Appeal, Third Appellate District.  In its decision affirming the judgment, the Court

10  of Appeal summarized the relevant facts as follows:

11

12  Carmen Lee met defendant in October 2003.  Lee's friend, Nicole Sowells[,]
was dating defendant.  Lee had told Sowells that defendant had "just got out

13  from doing double murder."  Lee also was aware defendant carried a black .38
revolver with a brown handle to which "white ties or shoe strings or rubber

14  bands" were affixed.

15  Approximately one week before February 13, 2004, Lee was at the Hacienda
Gardens apartment complex on West La Loma where Sowells lived to pick

16  up Lee's two daughters.  Lee ran into defendant who wanted her to give him
and Sowells a ride.  Lee refused because she had to take her daughters to

17  school.  Defendant told her she was being disrespectful and needed to be
taught a lesson.  He then fired gunshots into the air until Lee believed the gun

18  was empty.

19  At approximately 7:00 a.m. on February 13, 2004, while at a house on
Glenview Road, Lee loaned her Jeep Cherokee to Sowells who wanted to

20  pick up defendant.  Upon her return, Sowells called Lee to tell her she was
outside the house.  Lee heard defendant in the background calling Lee a

21  "ho[]" and a "bitch[]."  Lee hung up the phone and ran outside to where the
car was parked.  She needed her car back to pick up her children and take

22  them to school.  Defendant continued "cussing" at Lee.  Lee sat in the
driver's seat and closed the door.  Defendant opened the car door, spit on her

23  face, and told her he was a "killer" and would "smash on [her]," meaning to
"beat down" or "hurt badly."  Lee was scared because she knew defendant

24  carried a gun and his hand was placed on the pocket in which he carried the
gun.

25
Lee urged Sowells to leave with her.  Instead, Sowells removed her

26  belongings from Lee's car.  As Lee was driving away, defendant ran down
the driveway, shooting at Lee.  He then positioned himself in the middle of

27

28                                                    2

the street and continued shooting at Lee. Lee was so scared she lost control of her bladder and urinated on herself. Lee drove to the Hacienda Gardens apartment complex where her children were staying. Lee got her children out of Sowell's apartment and called the police.

At 8:10 a.m., Sacramento County Sheriff Deputy Timothy Gorham arrived at the Hacienda Gardens apartment complex and spoke to Lee. Lee said "Paris Ollie" or "Paris Harris" threatened her and shot at her. Lee was upset, very nervous, and very scared.

"[A]t some point," Deputy Gorham "receive[d] information" defendant might be in apartment No. 20. The officers knocked on the door of apartment No. 20 for several minutes without an answer. Deputy Gorham asked someone from the manager's office to open the door to the apartment. In the bedroom, officers found defendant, two small children, and an adult woman named Janae Robertson. Defendant refused to identify himself and was handcuffed and detained. In the bathroom, officers found a ".38 round" in the middle of the floor. In a pullout drawer at the bottom of the oven, officers found a ".38 revolver" with a rubber band wrapped around the handle. Gunshot residue was found on defendant's right hand.

*Defense*

Defendant testified he was not at Glenview drive on the morning of the shooting and never left Sowell's apartment. He denied the altercation with Lee in the days prior to February 13, 2004, denied drawing a gun on her, denied shooting a gun in the air, and denied threatening her. He had been committed to the California Youth Authority (CYA) for over nine years for two first-degree murders.

Lodged Doc. 1 at 2-4.

B

On October 6, 2005, the California Court of Appeal for the Third Appellate District affirmed Harris's judgment of conviction on his direct appeal. Lodged Doc. 1. On October 31, 2005, Harris sought review in the California Supreme Court. Lodged Doc. 2. The California Supreme Court denied Harris's petition for review on December 14, 2005. Doc.1.

C

On August 28, 2006, Harris filed an application for a writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254. Doc. 1. Felker acknowledges that Harris has exhausted his state grounds for relief. Doc. 8 at 2.

3

PDF created with pdfFactory trial version www.pdffactory.com

II

A

This petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Under AEDPA, a federal court has limited power to grant habeas corpus relief.  AEDPA provides that

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision may result in a decision that is "contrary to" established federal law if it "applies a rule that contradicts the governing law set forth in our cases" or "confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The state court's decision may be "an unreasonable determination" if "the state court identifies the correct governing legal principle" but applies the principle unreasonably to the prisoner's factual situation. *Id.* at 413.

When the state court does not explain its reasoning for denying a habeas petition, the federal court "must conduct an independent review of the record to determine whether the state court's decision was objectively reasonable." *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).  State court decisions may only be subject to federal habeas relief if they are unreasonable, more than merely erroneous. *Early v. Packer*, 537 U.S. 3, 11 (2002).

4

PDF created with pdfFactory trial version www.pdffactory.com

1

B

2       Harris's petition for habeas relief is subject to the AEDPA requirements that
3 the prior state court decisions refusing his petition are unreasonable, that is, contrary
4 to federal law, or an unreasonable determination of the facts.  "In determining
5 whether a state court decision is contrary to federal law, we look to the state's last
6 reasoned decision," in this case, the opinion given by the California Court of Appeal
7 on Harris's direct appeal.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002); *see*
8 *also Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  The Court of Appeal
9 addressed two of the three claims Harris raises in his habeas petition, and rejected
10 these claims in a reasoned opinion.  *See* Lodged Doc. 1.  Therefore, for those issues,
11 this Court analyzes the Court of Appeal's opinion for reasonableness.

12       However, the state courts provided no reasoned opinion regarding Harris's
13 final claim.  Where there is no reasoned decision from the state court, this court
14 must conduct an independent review of the record to determine if the state court's
15 denial was objectively unreasonable.  *Himes v. Thompson*, 336 F.3d 848, 853 (9th
16 Cir. 2003).

17

C

18       Harris asserts that he is entitled to habeas corpus relief on three grounds.
19 First, he argues that the search and seizure of Sowell's apartment, which
20 precipitated his arrest and produced evidence of the .38 revolver, was
21 unconstitutional.  Second, Harris argues that he was incompetent to stand trial, and
22 the trial court violated his due process rights in refusing to conduct a competency
23 hearing.  Third, Harris argues that the trial court's use of his prior juvenile
24 adjudications in imposing his sentence violated his rights, because those prior
25 adjudications were reached without a jury trial.  Each of these claims is discussed
26 below.

27

28

PDF created with pdfFactory trial version www.pdffactory.com

III

A

Harris claims that the search and seizure of Sowell's apartment on February 13, 2005, was unconstitutional, therefore any and all evidence against him discovered during that search should have been suppressed at the trial stage. The Court of Appeal analyzed Harris's claim on direct appeal from his jury conviction, and concluded that the search was reasonable because Sowell had given her consent to search and seizure in advance, as a condition of her probation. Lodged Doc. 1. Further, it ruled that the police who conducted the search had enough substantial evidence to reasonably determine that they were authorized to search the apartment. Sowell's aunt initially informed them that she was on searchable probation, and they confirmed the information by searching for Sowell in the sheriff department's known person's file. The information in the file indicated that Sowell lived in that apartment and that she was on "formal searchable probation." At trial, Sowell confirmed that she was on searchable probation at the time of the search.

The Supreme Court has ruled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). Harris has had the opportunity for full and fair litigation of his Fourth Amendment claim in the state courts, as evidenced by the Court of Appeal's opinion. Accordingly, habeas relief is not warranted on this ground.

B

Harris further claims that the trial court's decision not to conduct a competency hearing violated his rights to due process. Harris raised this argument

6

1   before the Court of Appeal on direct appeal.  Lodged Doc. 1.  The Court of Appeal

2   ruled that the trial court was correct in deciding not to conduct a competency

3   hearing "because there was no substantial evidence raising a reasonable doubt as to

4   [Harris's] competency."  Lodged Doc. 1 at 11.

5          Supreme Court precedent indicates that a trial judge is required to conduct a

6   competency hearing when the evidence before the court raises a bona fide doubt as

7   to the defendant's competence to stand trial.  *Pate v. Robinson*, 383 U.S. 375, 385

8   (1966); *Drope v. Missouri*, 420 U.S. 162, 179 (1975).  However, Supreme Court

9   precedent is equally clear that "[a] defendant's mental condition is not necessarily at

10  issue in every criminal proceeding."  *Ake v. Oklahoma*, 470 U.S. 68, 82 (1985).

11  There is no precedent to suggest that a competency hearing or provision of a

12  psychiatric examination is required in cases where the trial court has no substantial

13  reason to doubt the defendant's competency.  *Cf. Davis v. Woodford*, 333 F.3d 982,

14  997 (9th Cir. 2003) ("Only when 'the evidence raises a bona fide doubt' about the

15  defendant's competence to stand trial must a trial judge *sua sponte* conduct an

16  evidentiary hearing."); *Hernandez v. Ylst*, 930 F.2d 714, 716 (9th Cir. 1991) ("A

17  [competency] hearing is not required . . . absent a 'substantial' or 'bona fide' doubt

18  of competency.").

19         The state court's ruling on this issue was not unreasonable either in its use of

20  applicable federal law or its application of the law to the facts.  The state court

21  correctly identified the applicable standard by citing *People v. Hale*, 749 P.2d 769,

22  774, 44 Cal. 3d 531, 539 (Cal. 1988), for the proposition that "a competency

23  hearing is required when substantial evidence of the accused's incompetence has

24  been introduced."  The state court then correctly found that, in this case, "there was

25  no substantial evidence raising a reasonable doubt as to [Harris's] competency."

26  Lodged Doc. 1 at 11.

27

28                                              7

PDF created with pdfFactory trial version www.pdffactory.com

1   The only evidence presented before the trial judge regarding Harris's
2   competency was allegations by his counsel that Harris resisted her attempts to
3   counsel him and made decisions that indicated he did not understand the
4   proceedings.  Lodged Doc. 1 at 9.  In addition, Harris's counsel informed the court
5   that Harris's sister had reported that Harris had begun to say things over the phone
6   that were incoherent.  Lodged Doc. 1 at 8-9.  In response to these allegations, Harris
7   indicated that he was sticking by his decisions, and when his attorney pressed the
8   issue by requesting a continuance so a psychologist could examine him, he made a
9   *Marsden* motion.  *People v. Marsden*, 465 P.2d 44, 2 Cal. 3d 118 (Cal. 1970).  In
10  his motion, he opposed the requested continuance, stating that he had no history of a
11  mental disorder and believed he was competent.  Lodged Doc. 1 at 9-10.  Further,
12  Harris indicated that he did not wish to postpone matters to visit with a
13  psychologist.  Lodged Doc. 1 at 10.

14  Given this set of facts, the state court was not objectively unreasonable in its
15  determination that there was not sufficiently substantial evidence to require a *sua*
16  *sponte* competency hearing.  Accordingly, habeas relief is not warranted on this
17  ground.

18                                                  C

19  Finally, Harris claims that the trial court's use of his prior juvenile
20  adjudications in imposing his sentence violated his rights under Supreme Court
21  precedent, specifically the ruling in *Cunningham v. California,* 127 U.S. 856
22  (2007).  Harris brought this claim in his petition for review before the California
23  Supreme Court, which issued a summary denial of the petition without providing a
24  reasoned basis for its decision.  Lodged Doc. 2.  Without such an opinion by the
25  state courts, this court must conduct an independent review to determine whether
26  the state court clearly erred in applying controlling federal law.  *Himes*, 336 F.3d at

27

28                                                 8

PDF created with pdfFactory trial version www.pdffactory.com

1   853.

2       This court may only grant a habeas petition in cases where the state court

3   decision was contrary to clearly established federal law, as set forth by the Supreme

4   Court, in place at the time of the state court decision. *Moses v. Payne*, 543 F.3d

5   1090, 1098 (9th Cir. 2008); 28 U.S.C. § 2254(d)(1). The state court's final decision

6   denying Harris's petition for review occurred at the end of 2005. Therefore, this

7   court must determine the reasonableness of that denial on the basis of Supreme

8   Court jurisprudence as it existed at that time.

9       Because *Cunningham* had not yet been decided at the time of the state court's

10  decision, we look instead to Supreme Court decisions in place at the time of the

11  final state court decision. The Court ruled in *Apprendi v. New Jersey*, 530 U.S.

12  466, 490 (2000), that "[o]ther than the fact of a prior conviction, any fact that

13  increases the penalty for a crime beyond the prescribed statutory maximum must be

14  submitted to a jury, and proved beyond a reasonable doubt." The Supreme Court

15  had not defined the scope of a "prior conviction" at that time, nor has it done so

16  subsequently. In fact, the Circuits are split whether or not prior nonjury juvenile

17  adjudications are convictions for the purposes of the *Apprendi* exception. *Compare*

18  *Boyd v. Newland*, 467 F.3d 1139, 1151-52, (9th Cir. 2006) (holding that nonjury

19  juvenile adjudications are not convictions for the purpose of the *Apprendi*

20  exception) *with United States v. Burge*, 407 F.3d 1183, 1186 (11th Cir. 2005) ("The

21  term 'conviction' includes a finding that a person has committed an act of juvenile

22  delinquency involving a violent felony.") *and United States v. Jones*, 332 F.3d 688,

23  696 (3d Cir. 2003) (citing *United States v. Smalley*, 294 F.3d 1030, 1033 (8th Cir.

24  2002), for the proposition that "the absence of the right to a jury trial does not

25  automatically disqualify juvenile adjudications for purposes of the *Apprendi*

26  exception").

27

28                                          9

The California state courts have disagreed with the Ninth Circuit interpretation of "prior conviction," adopting instead the interpretation of the Third, Eighth, and Eleventh Circuits. *See, e.g., People v. Bowden*, 102 Cal. App. 4th 387, 391-94 (Cal. Ct. App. 2002). Although this viewpoint contradicts the federal law established in our Circuit, it is not "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Therefore, habeas relief is not warranted on this ground.

As indicated above, this court has concluded that the state court's rejection of Harris's claims was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Therefore, this court cannot grant Harris's petition.

## Conclusion

It is hereby ordered that Harris's application for a writ of habeas corpus is DENIED. The Clerk is directed to enter judgment and close the case.

DATED: January 27, 2009

/s/ Milan D. Smith, Jr.

UNITED STATES CIRCUIT JUDGE

Sitting by Designation

10